UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JULIA D'ORIA,

    Plaintiff,

v.                                     Case No: 6:16-cv-1779-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER[1]

Plaintiff Julia D'Oria brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security denying her applications for a period of disability, disability insurance benefits, and supplemental security income. After due consideration, the Commissioner's final decision is **reversed** and this case is **remanded**.

## Background[2]

Plaintiff filed for benefits, claiming disability from a combination of physical and mental impairments including fibromyalgia, bipolar disorder, degenerative disc disease and major depression (Tr. 251-267). She alleged a June 26, 2010 onset date (Tr.103). Plaintiff was 43 years old at the time of her alleged onset, with past work experience as a cashier and server/hostess (Tr. 35, 54). Her applications were denied initially and on reconsideration and she requested and received a hearing before an administrative law judge ("ALJ"). In a decision dated June 11, 2013, the ALJ found Plaintiff not disabled

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge and the matter has been referred in accordance with 28 U.S.C. §636(c) and FED. R. CIV. P. 73.
[2] The information in this section is taken from the parties' joint memorandum (Doc. 17).

through the date of the decision (Tr. 21-43). The Appeals Council denied Plaintiff's request for review (Tr. 7-9). Accordingly, the ALJ's decision is the final decision of the Commissioner. Plaintiff has exhausted the available administrative remedies and this matter is ripe for judicial determination.

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and codified in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (Tr.26). At step two, the ALJ determined that Plaintiff was severely impaired by spondylosis, degenerative disc disease, shoulder disorder, carpal tunnel syndrome status post-surgery, and affective disorder (20 CFR 404.1520(c) and 416.920(c)) (Tr. 26). The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equalled the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 27). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of six hours in an eight hour workday; sit for a total of six hours in an eight hour workday; push and/or pull unlimited, other than as shown for lift and/or carry; and must avoid concentrated exposure to fumes. Furthermore, the claimant can perform simple, routine tasks and is capable of responding appropriately in the workplace. She would have no problem with occasional interactions with coworkers and the public.

(Tr. 28-29).

At step four, the ALJ determined that Plaintiff was unable to return to her past relevant work (Tr. 34-35). Then, considering Plaintiff's age, education (G.E.D.), work experience, and RFC, the ALJ applied the Medical-Vocational Rules and concluded that Plaintiff could perform other jobs that existed in the national economy (Tr. 35-36). Therefore, the ALJ found Plaintiff not disabled from June 26, 2010, through the date of the decision (Tr. 36).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the

district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff contends that the ALJ committed reversible error by failing to take testimony from a vocational expert and by failing to properly evaluate and weigh the opinions of her treating psychiatrist, Dr. Samuel McClure. I find the second issue to be dispositive.

Whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons for the assigned weight. Winschel, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to

support the opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec., No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

Plaintiff's treatment with psychiatrist Samuel McClure began prior to her alleged onset of June 26, 2010. On April 12, 2010, Plaintiff presented to the doctor, complaining of "anger management, racing thoughts, irritability, frustration, labile mood, depression, etc." (Tr. 603-04). On mental status examination, Plaintiff was alert, cooperative and conversant, and maintained reasonable eye contact. She appeared somewhat irritable, angry and frustrated. There was no evidence of hallucinations, delusions, paranoid ideations, obsessions, compulsions, dissociation, racing thoughts, pressured speech or

grandiosity reported. Dr. McClure's rough estimate was that Plaintiff's intelligence was average or above. Her speech was clear and coherent and her mood was labile to depressed (Tr. 603). Dr. McClure diagnosed Plaintiff with bipolar disorder and prescribed mood stabilizers (Tr. 603-04). She was "stable" and doing "adequately" in May 2010, albeit with "some depression" and "continue[d] to show signs and symptoms of mood disorder" (Tr. 715). In a June 2010 treatment note, the doctor opined that Plaintiff exhibited "no evidence of an overt thought disorder." (Tr. 713). At the July 2010 visit, Plaintiff reported mood swings and irritability (Tr. 712). In September 2010, Plaintiff reported that she had been taking herself off all medication (Tr. 711). She continued off her medication, except for 450 of Lithium, in October 2010, and Dr. McClure felt she was "doing adequately." (Tr. 710). November 2010 notes show that another doctor started Plaintiff on Wellbutrin and Dr. McClure increased that dose and added Seroquel (Tr. 709). In January 2011, Abilify was added (Tr. 708). Plaintiff continued to be described as "doing adequately." (Id.) Plaintiff discontinued Abilify on her own in February, and Topomax was added (Tr. 707).

In March of 2011, Dr. McClure observed that Plaintiff was having difficulty with anger, frustration, and hostility and he adjusted her medications (Tr. 706). Two weeks later, Plaintiff reported that she was doing well (Tr. 705). She continued to take Wellbutrin every morning but Dr. McClure began to taper Plaintiff off of Topamax because she reported that it was actually making her symptoms worse (Id.). In April, 2011, Dr. McClure reported that Plaintiff's mood was euthymic (Tr. 704). She had experienced some difficulty with the lower dose of Topamax, so Dr. McClure planned to gradually increase her dosage. (Id.).

In August of 2011, Dr. McClure saw Plaintiff again (Tr. 840) and completed a Treating Source Mental Status Report at the request of the state agency (Tr. 723-25). He described Plaintiff's mood as "labile/ dysthymic, expansive, depressed" and her affect "appropriate" (Tr. 723). Dr. McClure noted that Plaintiff's thought processes were logical and goal-directed but expansive (Tr. 724). The doctor described her thought content as "suicidal ideation." (Id.). Plaintiff's memory was intact, but her concentration was poor. (Id.). Dr. McClure's diagnosis was bipolar disorder, mixed type (Id.). He opined that Plaintiff was competent to manage funds and felt that she could still perform her activities of daily living (Tr. 725). In response to the question: "Is this individual capable of sustaining work activity for eight hours a day, five days a week? If not, explain why using examples of behavioral objective data," Dr. McClure wrote: "very poor anger mtg." (Tr. 725).

Dr. McClure saw Plaintiff again on November 21, 2011 (Tr. 836). He described her as "functioning" on medication and "doing adequately," but "she has had some irritability, anger, frustration, hostility." (Tr. 836). Dr. McClure prepared another mental status report for the state agency (Tr. 756-58). Once again, he described Plaintiff's mood as depressed and labile and her diagnosis continued to be mood disorder/bipolar disorder (Tr. 756). According to the doctor, Plaintiff's thought process was "intact" with no delusions or hallucinations, but she was "explosive" and had "mild paranoia." (Id.). Dr. McClure rated Plaintiff's concentration as poor (Id.). Her memory and orientation were intact and her appearance was unkempt, but behavioral observations were otherwise within normal limits (Id.). As to whether Plaintiff was capable of sustaining work, Dr. McClure concluded "no" due to "explosive anger" (Tr. 758).

The ALJ addressed Plaintiff's mental impairment and treatment, as follows:

The medical evidence of record does not substantiate the alleged severity of the claimant's mental impairment. The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual and the treatment she received has been essentially routine and/or conservative in nature. Furthermore, the record reflects numerous instances where the claimant reported relief from pain as a result of treatment and medication. Therapy notes from Family Counseling Center reflect that the claimant was making fair progress towards her goals and reducing her anxiety. Mental status consistently reflected no areas of concern or significant change from last visit. (Exhibits 12F and 16F)

The claimant treated with Samuel S. McClure, M.D. for medication management. In July of 2010, the claimant was doing adequately. A progress note in September of 2010 indicated that the claimant had taken herself off all medication. She was subsequently started on Wellbutrin XL, Seroquel, and Topamax. A progress note in March of 2011 indicated that the claimant was doing well. (Exhibits 13F and 22F) In August of 2011, the claimant was doing adequately. There was no evidence of overt thought disorder. There was no headache, nausea, gastrointestinal distress, insomnia, anorexia, tic or movement disorder, chest pain, cardiac irregularity, syncopal episodes, diminution of height, myocardial infarction, stroke, seizure, arrhythmia, or hypertension. A progress note in November of 2011 indicated that the claimant was doing adequately on the prescribed treatment regimen. She was functioning with the medication. She had some irritability, anger, frustration, and hostility. A progress note in February of 2012 indicated that the claimant was doing adequately on the prescribed treatment regimen. There were no signs of suicidal or homicidal ideation or intention. There was no evidence of an overt thought disorder. (Exhibit 22F)

A progress summary report dated January 10, 2013 indicated that the claimant was benefitting from her medication regimen. Mental status examination revealed that the claimant was cooperative. Her mood was irritable. **She had problems with intermittent explosive anger**. Her speech was fluent and coherent, without abnormality. Significant affect of lability was observed and described. She denied suicidal or homicidal ideations and auditory or visual hallucinations. No psychotic processes were noted. (Exhibit 25F) **Dr. McClure completed a treating source mental status reports indicating that the claimant's mood was labile/dysthymic, expansive, and**

> depressed with appropriate affect. Thought process was
> logical, expansive, and goal directed. Concentration was poor.
> Immediate, recent, and remote memory were intact. (Exhibits
> 14F and 17F)

(Tr. 33 – emphasis added). Plaintiff contends that the Commissioner's decision must be reversed because the ALJ failed to consider and weigh Dr. McClure's two medical opinion statements concerning her disabling anger issues. Curiously, although the ALJ recognized the treatment notes reflecting Plaintiff's anger issues, he did not note or weigh Dr. McClure's opinion that Plaintiff's functional abilities were limited by her "explosive anger." I agree with Plaintiff that this omission is reversible error.

The Commissioner counters that reversal is not required as the mental status reports are "checklists," which are generally disfavored. The Commissioner also argues that the report from August 15, 2011 "contained no opinion regarding how Plaintiff's alleged limitations would limit her ability to perform work" and the report from November 21, 2011 "did not contain a true medical opinion." (Doc. 17 at 14). Further, to the extent Dr. McClure opined that Plaintiff could not work, the Commissioner contends that such opinions "are not medical opinions, ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability," citing 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183; Denomme v. Comm'r of Soc. Sec, 518 F. App'x 875, 878 (11th Cir. 2013); and Hutchinson v. Astrue, 408 F. App'x 324, 327 (11th Cir. 2011). The Commissioner's argument is a post-hoc rationale which does not excuse the ALJ's failure to weigh Dr. McClure's opinions as required by Winschel and its progeny.

The treating statement is not a checklist; rather, Dr. McClure handwrote answers

to the questions the state agency promulgated. While I agree with the Commissioner that a bald conclusion that a claimant was disabled or could not work is entitled to no deference, the opinions here, from a long-time treating specialist, provided much more information regarding Plaintiff's functional abilities than a mere conclusion that she was disabled. As such, these opinions were due to be considered and weighed. The unexplained failure to do so requires remand for further consideration.[3]

As the case is remanded for further consideration of the opinion evidence which may result in a new RFC finding, Plaintiff's contention that the ALJ erred in failing to obtain testimony from a vocational expert is moot.

## Conclusion

Upon consideration of the foregoing:

(1) The Commissioner's decision is **REVERSED** and this case is **REMANDED under sentence four of 42 U.S.C. §405(g)** for further administrative proceedings consistent with the foregoing.

(2) The Clerk is **directed** to enter judgment accordingly and **CLOSE** the file.

(3) The deadline for Plaintiff to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after she receives notice from the Social Security Administration of the amount of any past due benefits awarded.

(4) Upon receipt of such notice, Plaintiff shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise that the notice has been received.

---

[3] In remanding, I do not mean to imply that I find Dr. McClure's opinions persuasive and entitled to deference, or that the record could not support a finding discounting the opinions. Rather, in keeping with the appropriate standard of review, the question as to what weight (if any) should be given to these opinions is a matter which must be determined by the ALJ in the first instance.

**DONE** and **ORDERED** in Orlando, Florida on July 5, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record